IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:13-CR-370-4 |
| CHARLES RONNELL WILLIAMS, | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER REDUCING SENTENCE**

Catherine C. Eagles, District Judge.

The defendant-inmate, Charles Williams, is serving a 151-month sentence in the custody of the Bureau of Prisons for bank robbery. He has end-stage renal failure for which he receives dialysis three times a week, diabetes, and hypertension. He has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) asking the Court to reduce his sentence. In light of the serious health risks he is facing from the COVID-19 virus, which persists in the prison where he is incarcerated, his age, the length of time he has already served on his sentence, his generally positive record in prison, and an acceptable release plan, his motion will be granted.

## **COMPASSIONATE RELEASE**

While courts do not have unfettered jurisdiction or discretion to modify criminal sentences after they become final, *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010), 18 U.S.C. § 3582(c)(1)(A), commonly known as the "compassionate release" provision, does authorize courts to reduce a defendant's sentence upon a showing of

"extraordinary and compelling reasons," subject to the statutory exhaustion requirement and consideration of the 18 U.S.C. § 3553(a) factors.[1] 18 U.S.C § 3582(c)(1)(A). When the § 3553(a) factors weigh in favor of a sentence reduction and extraordinary and compelling reasons exist, a sentence reduction is appropriate. *See United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640, at *2–3 (E.D.N.C. Apr. 30, 2020) (granting sentence reduction to inmate on dialysis after considering § 3553(a) factors).[2] When the § 3553(a) factors do not support a sentence reduction, a sentence reduction is not appropriate, despite the risks posed by the COVID-19 pandemic. *See United States v. Seshan*, No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *3–4 (S.D.N.Y. May 6, 2020) (acknowledging renal disease can lead to increased risk of serious illness from COVID-19 but denying compassionate release in light of § 3553(a) factors).

## FACTS

On November 9, 2012, three men entered a BB&T bank in Winston-Salem with their faces concealed. Doc. 113 at ¶ 8. They yelled at the tellers to "go to the vault" and

---

[1] The statute also requires that a sentence reduction be consistent with any applicable policy statement issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). As the Sentencing Commission has not yet enacted a policy statement applicable to motions brought by defendants, the Court will consider the policy statement applicable to motions brought by the Bureau of Prisons as providing helpful guidance. *See United States v. Beck*, 425 F. Supp. 3d 573, 579–80 (M.D.N.C. 2019). That statement generally directs courts to consider the same things already considered in evaluating whether there are extraordinary and compelling reasons and whether the § 3533(a) factors support a reduction, and the Court will not discuss it further.

[2] *See also, e.g., United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) (granting compassionate release to an inmate with end-stage renal disease because "the applicable § 3553(a) factors support Defendant's request for compassionate release and that Defendant will not pose a threat to the community."); *United States v. Williams*, No. 3:04cr95/MCR, 2020 WL 1751545, at *3–4 (N.D. Fla. Apr. 1, 2020) (same).

to "get down" on the floor, and they left with $13,953 from teller drawers. *Id.* No firearms or other weapons were used or displayed. *Id.* Mr. Williams served as a lookout and drove the getaway car, but he did not enter the bank. Doc. 144 at 18.

On April 11, 2014, Mr. Williams pled guilty to one count of bank robbery, Minute Entry 04/11/2014; Doc. 75, and a few weeks later he was sentenced to 151 months in prison. Doc. 121 at 2. He had reached career offender status, and his long guideline range was driven by his terrible criminal record. Doc. 113 at ¶ 31. Mr. Williams was convicted of his first felony when he was 18. *Id.* at ¶ 37. He was in and out of jail and prison throughout his twenties and has a history of firearms violations, *id.* at ¶ 42, drug crimes, *id.* at ¶¶ 37–39, 41, 43, and parole violations. *Id.* at ¶¶ 39, 43. He was in prison for approximately seven years on two robbery convictions, was paroled in May 2009, *id.* at ¶ 45, and committed the bank robbery that led to his instant conviction just under four years later. *Id.* at ¶ 8. He has had only sporadic legitimate employment. *Id.* at ¶¶ 70–74.

He has been in custody since the date of the robbery, Doc. 113 at 1, for 93 months out of his 151-month sentence. Mr. Williams is currently enrolled in a GED program, *see* Doc. 235 at 4, and he has completed other education programs while incarcerated. Doc. 236 at 2. He has paid his special assessment and only $1,550.61 remains on the $13, 953 restitution order. *Id.* Mr. Williams has had two relatively minor disciplinary infractions, and none in the last 33 months. *Id.* at 1–2.

Mr. Williams is now a 54-year old man. *See* Doc. 113 at 2. He has neuropathy, hypertension, and diabetes. Doc. 234-4. While in prison, he developed end-stage renal disease, and he undergoes dialysis three times per week. *See generally* Docs. 234-3, 234-

4. He has problems with his eyes as a result of his diabetes. *See* Doc. 234-4. His health situation appears generally stable, he is "doing well" on hemodialysis, and his hypertension is "well controlled;" but his diabetes is "poorly controlled." Doc. 234-4 at 2. These conditions are chronic, and the BoP has permanently designated him to serve his sentence at a Medical Referral Center because of the intensity of services needed to provide him with appropriate medical care. *Id.*

On April 30, 2020, Mr. Williams asked the warden to file a compassionate release motion on his behalf. Doc. 231-1. The warden denied that request on June 2, 2020. Doc. 231-1. Mr. Williams filed a motion for compassionate release on June 23, 2020, asking the Court to reduce his sentence. Doc. 231.[3]

At the time of the government's brief on July 8, 2020, FMC Devens, where Mr. Williams is housed, had 9 inmates and 1 staff member who had tested positive for COVID-19, along with 2 inmate deaths and 43 inmates and 5 staff recovered. Doc. 234 at 7. Since then, active cases have dropped, but the virus remains in circulation at FMC Devens. *COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited August 24, 2020 and reporting 1 active inmate case and 2 active staff cases). While the Bureau appears to be doing a good job of confining the spread of the disease, the government has submitted no evidence about the steps the BoP has taken to protect vulnerable inmates like Mr. Williams, who was still in the general population in early May, several months into the pandemic. Doc. 234-4 at 2.

---

[3] The Court appointed counsel to represent Mr. Williams. Doc. 232. The government and defense counsel promptly filed briefs, and the motion is ripe for decision.

If released, Mr. Williams plans to live with his daughter in Los Angeles. Doc. 237 at ¶ 6. She is employed and has no criminal record, *id.*; *see also* Doc. 238, and, as verified by the U.S. Probation Office, she can provide a suitable residence and assistance in meeting Mr. Williams' medical needs. Doc. 238.

## ANALYSIS

Mr. Williams filed this motion on June 23, 2020, more than 30 days after he submitted his request to the warden. As the government agrees, *see* Doc. 234, Mr. Williams satisfies the exhaustion requirement. *See United States v. Davis,* No. 1:17-CR-69, 2020 WL 3976970, at *2–3 (M.D.N.C. July 14, 2020).

Ordinarily, Mr. Williams would not be eligible for a sentence reduction under § 3582(c)(1)(A). His end-stage renal disease is well-managed, he is receiving adequate medical care for his diabetes and other conditions, his offense of conviction was serious, and he has a bad criminal record. And the mere existence of the pandemic is not, by itself, an extraordinary and compelling reason for a sentence reduction, *United States v. Raia*, 954 F.3d 594, 596–97 (3d Cir. 2020), even if the facility where the inmate is incarcerated is experiencing an outbreak. *See, e.g., United States v. Eccleston*, No. Cr. PJM 11-0567, 2020 WL 4042854, at *4 (D. Md. July 17, 2020); *United States v. Hull*, No. 3:17-CR-132 (SRU), 2020 WL 2475639, at *3 (D. Conn. May 13, 2020).

But there is an emerging consensus in the district courts that medical conditions which would not ordinarily constitute extraordinary and compelling reasons can so constitute, when combined with a serious risk of contracting COVID-19 and severe

5

Case 1:13-cr-00370-CCE   Document 239   Filed 08/28/20   Page 5 of 10

complications if contracted.[4] When consistent with the § 3553(a) factors, a sentence reduction in these circumstances is appropriate.

As the government concedes, Doc. 234 at 13, serious health conditions like end-stage renal disease can be an appropriate basis for a sentence reduction, subject to the § 3553(a) factors. *See, e.g.*, *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020) (granting compassionate release in part because inmate's kidney failure constituted a "serious and advanced illness").[5] The Center for Disease Control is currently of the view that "chronic kidney disease of any stage" increases risk for severe illness from COVID-19, that diabetes presents an increased risk for severe illness from COVID-19 for people of any age, and that hypertension and a weakened immune system might also increase a person's risk of severe illness from the virus. *People with Certain Medical Conditions*, CDC,

---

[4] *See, e.g., United States v. Cordova,* No. 1:18-cr-00145-DAD-BAM, 2020 WL 4899938, at *4 (E.D. Ca. Aug. 20, 2020) ("Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality."); *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—[the defendant's] health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence."); *see also, United States v. Provost*, No. 3:18cr42, 2020 WL 4274570, at *4 (E.D. Va. July 24, 2020); *Dinning v. United States*, Nos. 2:12-cr-84, 2:12-cr-140, 2020 WL 1889361, at *2 (E.D. Va. Apr. 16, 2020).

[5] *Accord, United States v. Saad,* No. 16-20197, 2020 WL 2251808, at *4–5 (E.D. Mich. May 5, 2020) (concluding that chronic kidney disease and the spread of COVID-19 within the defendant's prison constituted extraordinary and compelling reasons); *United States v. Oreste*, No. 14-20349-CR-SCOLA, 2020 WL 4343774, at *2 (S.D. Fla. Apr. 6, 2020) (finding an inmate's end-stage renal failure and other illnesses constituted extraordinary and compelling reasons amidst the ongoing pandemic); *Williams*, 2020 WL 1751545, at *3–4, (same); *Muniz*, 2020 WL 1540325, at *2, (same)

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 24, 2020). While he is not elderly, Mr. Williams is not young, and his age also moves the dial towards increased risk of severe illness. *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 24, 2020).

Mr. Williams is at a significantly heightened risk of severe illness should he contract COVID-19, based on his age and the severity of his health conditions, especially his end-stage renal disease and diabetes. This increased risk combined with the ongoing circulation of the virus at FMC Devens, where Mr. Williams is incarcerated, constitutes extraordinary and compelling reasons for a sentence reduction.

Evaluation of the § 3553(a) factors is a harder question. This was a serious crime for which Mr. Williams and his co-defendants justifiably received lengthy prison sentences. And Mr. Williams has a terrible criminal record; he has been committing crimes since he was a teenager. He committed two robberies when he was 35 and even though he served a seven-year sentence, he committed the instant robbery within four years of his release from prison. Doc. 113 at ¶¶ 8, 45. While the risk of recidivism generally declines with age, *see United States v. Hamrick*, No. 1:19-CR-91, 2020 WL 4548308, at *3 (M.D.N.C. Aug. 6, 2020), Mr. Williams was 46 when he committed the instant robbery, and he has been committing crimes of increasing seriousness since he was 18. *See supra*. Nothing else appearing, his release would pose a risk of recidivism and danger to the community.

7

On the other hand, unlike when he committed these offenses, he is now on dialysis three times a week. This both increases his risk factors for COVID-19 complications at a prison experiencing an outbreak and reduces the risk of recidivism, as the need to regularly obtain dialysis three times a week, and the risks to him if he leaves his home, will act as a restraint on criminal conduct. *See United States v. Miller*, No. 3:15-cr-132-2 (VLB), 2020 WL 3187348, at *6 (D. Conn. June 15, 2020) (finding risk of recidivism was low because of defendant's "precarious health conditions and her risk of infection during the pandemic"). He is now 54 years old, and he has done reasonably well in prison. He will be on supervised release for three years, and the Court can reduce the risk to the community by imposing additional restrictions and conditions of supervised release. *See* § 3582(c)(1)(A) (authorizing additional conditions of supervised release when sentences are reduced). He has a suitable release plan.[6] He has served almost two-thirds of his sentence, approaching eight years, which is a substantial punishment, especially given his role in the offense and the fact that no weapons were displayed.

Given Mr. Williams' age, his end-stage renal disease and dialysis, his diabetes, the ongoing circulation of COVID-19 at FMC Devens, his release plan, his generally positive record while incarcerated, and the substantial amount of time he has already served, the Court concludes that extraordinary and compelling reasons exist and the § 3553(a) factors support a sentence reduction. The Court will grant the motion.

---

[6] *See, e.g.*, *United States v. Fernandez*, No. 12-CR-445-1 (JMF), 2020 WL 2731236, at *9–10 (S.D.N.Y. May 26, 2020) (granting compassionate release to an inmate undergoing dialysis because relevant sentencing factors, including his release plan, favored resentencing).

To further protect the public, the Court will add the following requirements and conditions to his supervised release: he must live with his daughter, Susie Williams, in Los Angeles, California, or at a residence approved in advance by his probation officer and he must confine himself to his residence and not leave except for medical appointments or other appointments approved in advance by the probation officer for the first twelve months of his supervised release. To accomplish this latter condition, he must, if directed by the probation officer, comply with the terms of an electronic or other location monitoring program.

## IV. CONCLUSION

Mr. Williams has complied with the statutory exhaustion prerequisites. His end-stage renal disease and other health factors combined with his age and the continuing circulation of COVID-19 in the facility where he is incarcerated constitute extraordinary and compelling circumstances. While a close case, a sentence reduction is consistent with the § 3553(a) factors.

Viewing the facts in their totality, the motion is granted. The defendant will be sentenced to time served, with additional conditions of supervised release.

It is **ORDERED and ADJUDGED** that:

1. The defendant's motion for compassionate release, Doc. 231, is **GRANTED.**
2. The defendant's sentence is **REDUCED** to time served, followed by supervised release for three years on the same terms previously imposed and the following additional conditions

a. Mr. Williams must live with his daughter, Susie Williams, in Los Angeles, California, or at a residence approved in advance by his probation officer;

b. For the first twelve months of his supervised release, he must confine himself to his residence and not leave except for medical appointments or other appointments approved in advance by the probation officer;

c. Mr. Williams must, if directed by the probation officer, comply with the terms of an electronic or other location monitoring program.

3. This Order is stayed for 21 days to give the BoP time to implement it and to give the Probation Office time to plan for Mr. Williams' release.

4. The Clerk shall provide a copy of this Order to the Probation Office.

This the 28th day of August, 2020.

_____
UNITED STATES DISTRICT JUDGE